IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: _____

| | | |
|---|---|---|
| LINDA GAIL THOMPSON, as Personal Representative of the Estate of JEROME THOMPSON, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| CITY OF CHARLOTTE, OFFICER ADELAIDE KINSTLER in her Official and Individual capacity; OFFICER BRIAN E. KURCSAK in his Official and Individual capacity; OFFICER JOSEPH B. WILSON in his Official and Individual capacity; Chief JOHNNY JENNINGS in his Official as Chief of the Charlotte-Mecklenburg Police Department and Individual capacity; SHERIFF GARRY L. MCFADDEN in his Official and Individual capacity;   DEPUTY LOUIS J. VENANT in his Official and Individual capacity, DEPUTY JOSEPH B. BREEDLOVE in his Official and Individual capacity, WELLPATH, LLC, EBONEE WALLACE in her individual capacity and as an agent of Wellpath, LLC, LAURA HOUSE in her individual capacity and as an agent of Wellpath, LLC, SAMANTHA ELLIOTT in her individual capacity and as an agent of Wellpath, LLC, AND "JOHN DOE" in his Official and Individual capacity. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | (Jury Trial Demanded) |
| Defendants. | | |

_____

1

Plaintiff, Linda Gail Thompson, as the Personal Representative of the Estate of Jerome Thompson, by and through counsel, complaining of the Defendants, jointly and severally, hereby alleges and says as follows:

## PARTIES

1. Jerome Thompson, Plaintiff's intestate, died on July 12, 2018. At the time of his death, Thompson was a citizen and resident of Mecklenburg County, North Carolina.

2. Plaintiff, Linda Gail Thompson, has been duly appointed by the Mecklenburg county Clerk of Court as the Administratrix of the Estate of Jerome Thompson. Plaintiff is a resident of Charlotte, Mecklenburg County, North Carolina and was the sister of the decedent. A copy of the Letters of Administration is attached hereto as Exhibit "A."

3. Defendant City of Charlotte is a properly organized municipality in the State of North Carolina.

4. Officer Adelaide Kinstler (hereinafter referred to as "Officer Kinstler") is or was as of July 11, 2018 a police officer employed by the Charlotte-Mecklenburg Police Department.

5. Officer Brian E. Kursak (hereinafter referred to as "Officer Kursak") is or was as of July 11, 2018 a police officer employed by the Charlotte-Mecklenburg Police Department.

6. Officer Joseph B. Wilson (hereinafter referred to as "Officer Wilson") is or was as of July 11, 2018 a police officer employed by the Charlotte-Mecklenburg Police Department.

7. Chief Johnny Jennings (hereinafter referred to as "Chief Jennings") is and was at all times relevant and complained herein the Chief of the Charlotte Mecklenburg Police Department, and at the ultimate supervisor of Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe.

8. Based on information and belief, the City of Charlotte has secured liability insurance, applicable to liability from any negligence, tort, or any cause of action as alleged in this Complaint by employees acting within the scope of their employment, and therefore waives municipal immunity.

9. That Defendant, Sheriff Garry L. McFadden (hereinafter referred to as "Sheriff McFadden"), to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina. Under the laws of North Carolina and policies and practices of Mecklenburg County, he is the chief law enforcement officer for Mecklenburg County and is responsible for the operation of the Mecklenburg County Detention Center, including the supervision, training and conduct of his officers and agents employed in the jail. He has a legal duty as Sheriff to safeguard the persons in his custody in the jail. Sheriff McFadden is sued in his official capacity under G.S. 58-76-5 and G.S. 153A-435. He and his office are also sued as *respondeat superior* for the actions and omissions of his jailers.

10. Sheriff McFadden, or the office of the Sheriff or Mecklenburg County on the sheriff's behalf has purchased commercial insurance or paid to participate in a local government risk pool that covers claims in this case and will indemnify the Defendants in

3

this matter if they are found liable, thereby waiving any governmental or sovereign immunity that might otherwise apply to the Sheriff or his agents in this action.

11. That Defendant, Deputy Louis Venant (hereinafter referred to as "Deputy Venant"), to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina and was at all material times and is employed by Sheriff McFadden at the Mecklenburg County Detention Center and is being named as a Defendant herein both in an official and individual capacity. The surety bond and the commercial insurance or risk pool arrangement referred to in the previous paragraph waive any claim to governmental or sovereign immunity that this Defendant might claim in his official capacity. To the extent he is considered a public official, his gross negligence pierces and public officer immunity that would apply to him.

12. That Defendant, Deputy James E. Breedlove, Jr. (hereinafter referred to as "Deputy Breedlove"), to Plaintiff's information and belief is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed by Sheriff McFadden at the Mecklenburg County Detention Center and is being named as a Defendant herein both in an official and individual capacity. The surety bond and the commercial insurance or risk pool arrangement referred to in the previous paragraph waive any claim to governmental or sovereign immunity that this Defendant might claim in his official capacity. To the extent he is considered a public official, his gross negligence pierces and public officer immunity that would apply to him.

4

13. That Defendant, Wellpath, LLC (hereinafter "Defendant Wellpath") to Plaintiff's information and belief, is a foreign corporation licensed and doing business in Mecklenburg County, North Carolina with employees, servants and agents in Mecklenburg County, North Carolina, and which employed medical staff at the Mecklenburg County Jail and had a contract to provide medical care to inmates at the at the Mecklenburg County Jail.

14. That Defendant, Ebonee Wallace, to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed as a Nurse by Wellpath, LLC at the Mecklenburg County Jail, and is being named as a defendant herein both as an employee of Wellpath, LLC and individually.

15. That Defendant, Samanth Elliott, to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed as a Nurse by Wellpath, LLC at the Mecklenburg County Jail, and is being named as a defendant herein both as an employee of Wellpath, LLC and individually.

16. That Defendant, Ebonee Wallace, to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed as a Nurse by Wellpath, LLC at the Mecklenburg County Jail, and is being named as a defendant herein both as an employee of Wellpath, LLC and individually.

5

17. That at all times hereinafter mentioned, Defendant, Ohio Casualty Insurance Company (hereinafter referred to as "Ohio Casualty"), was and is a surety company and serves as the surety bond holder for Defendant Sheriff McFadden, pursuant to N.C.G.S. § 162-8 and §58-76-5.

18. Upon information and belief, Defendant Ohio Casualty was the surety on the official bond required by N.C.G.S. § 162-8 and is therefore liable for the acts of McFadden under virtue or color of office resulting in serious harm and injury pursuant to N.C.G.S. §58-76-5.

19. Upon information and belief, Sheriff McFadden waived applicable immunity by obtaining a surety bond and by purchasing liability insurance.

20. That Defendant "John Doe" to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed with the Charlotte Mecklenburg Police Department and/or at the Mecklenburg County Detention Center, and is being named as a Defendant herein both as an employee of Charlotte Mecklenburg Police Department and/or at the Mecklenburg County Detention Center and individually and in his official capacity, to be identified and served upon disclosure by Defendants who are in exclusive possession and control of John Doe's identity.

21. That Defendant "John Doe" to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed as a the Medical Director and Chief Physician employed by Defendant

6

Wellpath at the Mecklenburg County Jail, and is being named as a defendant herein both as an employee of Wellpath and individually, to be identified and served upon disclosure by defendants who are in exclusive possession and control of John Doe's identity.

## JURISDICTION, VENUE, AND NOTICE

22. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

23. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.  The Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

24. The court has jurisdiction pursuant to 28 U.S.C. §1343(3) (civil rights), and 28 U.S.C. §1331 (federal question).

25. This case is instituted in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

26. Supplemental pendent jurisdiction is based on 28 U.S.C. §1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

## GENERAL ALLEGATIONS

7

27. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

28. The Sheriff has waived any claim of sovereign immunity for himself and his deputies, by purchasing a surety bond pursuant to N.C.G.S. 58-76-5 and/or by purchasing liability insurance pursuant to N.G.S. 153A-435 and/or by participation in a risk management pool as authorized by statute.

29. The Mecklenburg County Detention Center was constructed in 1997 and all operations officially moved into the facility in 1997. It consists of several administration offices, a public lobby and visitation, Booking and Releasing areas, a Medical Station, and 5 Inmate Housing Blocks.

30. The Sheriff has the full legal authority and responsibility for operating the Mecklenburg County Detention Center. The Detention Center operates under the authority of the Mecklenburg County Sheriff and under the direction of the Facility Commander and Administrative Captain.

31. The Sheriff, by and through his Deputies, is responsible for directing the operation of the Mecklenburg County Detention Center including the supervision of the detention staff, overseeing inmate medical care, and adhering to department policies and procedures to insure the security, safety and well-being of employees and inmates.

32. In accordance with 10A N.C.A.C. 14J.0203, the operations of the Mecklenburg County Detention Center are governed by the following industry standards:

8

(1)   Appalachian State University, Model Policies and Procedures Manual for North Carolina Jails; 10A N.C.A.C. 14J.0203;

(2)   American Correctional Association, Standards for Adult Local Detention Facilities;

(3)   American Correctional Association, Standards for Small Jails; and

(4)   National Commission on Correctional Health Care, Standards for Health Services in Jails.

33. Under the United State Constitution and the North Carolina State Constitution, the Sheriff has a non-delegable duty to provide adequate medical care including mental health screenings to inmates detained at the Mecklenburg County Detention Center operated by the Sheriff.

34.   The Sheriff, Sheriff Deputies, and Detention Center Staff knew, or should have known, that deliberate indifference to the serious mental health needs of an inmate constitutes the unnecessary and wanton infliction of pain prescribed by the Eighth and Fourteenth Amendments to the United States Constitution.

## STATEMENT OF FACTS

35. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

36. At all relevant times the Defendants Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe was in uniform and acting within the scope of his employment and under color of state law. Particularly, at all relevant times Defendants Officer Kinstler,

9

Officer Kursack, Officer Wilson, and John Doe acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the City of Charlotte, a municipal entity in the State of North Carolina.

37. At all relevant times Defendants Chief Jennings, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe acted under color of state law.

38. On or about July 11, 2018, Jerome Thompson was arrested and taken into custody of the Charlotte Mecklenburg Police Department and placed at their Steele Creek Division Office.

39. Upon information and belief, Charlotte-Mecklenburg Police officers were provided information that Mr. Thompson was suicidal and had relayed to his family members that he would either commit suicide or be killed by police officers.

40. Upon information and belief, Jerome Thompson was read his Miranda Rights and requested a lawyer.

41. Mr. Thompson was advised of his charges by Charlotte-Mecklenburg Police officers and advised that he would be transported to the Mecklenburg County Jail.

42. While Charlotte-Mecklenburg Police officers completed Mr. Thompson's paperwork, Mr. Thompson was seen on surveillance attempting to puncture his artery with a pen cap.

43. During this same time period, Mr. Thompson was seen on surveillance video placing himself against the interview room wall and intentionally falling backwards onto his head.

44. Charlotte-Mecklenburg Police officers returned to the interview room where he found Mr. Thompson lying on the floor and called medical staff to assist Mr. Thompson.

45. Upon information and belief, Mr. Thompson was transported by Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe to Carolina's Medical Center where his head injuries were treated, and Mr. Thompson was released to be transported to the Mecklenburg County Jail.

46. Upon information and belief, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe failed to notify medical staff about Mr. Thompson's two suicide attempts either during transport or when he arrived at Carolina's Medical Center.

47. On July 11, 2018 at approximately 3:55 p.m., Mr. Thompson was delivered by Charlotte-Mecklenburg Police Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe to the Mecklenburg County Jail.

48. Upon information and belief, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe failed to provide any information to Mecklenburg County Jail intake personnel, specifically Deputy Venant or Deputy Breedlove regarding Mr. Thompson's prior suicide attempts.

49. Upon information and belief, in the alternative, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe provided information regarding Mr. Thompson's prior suicide attempts to Mecklenburg County Jail intake personnel including Deputy

11

Veantn and Deputy Breedlove but Mecklenburg County Jail personnel failed to use this information in the screening of Mr. Thompson.

50. Mr. Thompson was processed and booked into the Mecklenburg County Detention Center.

51. During Mr. Thompson's booking Jail staff performed a receiving screening for Mr. Thompson and identified that Mr. suffered from extreme depression and was currently taking multiple medications for this issue.

52. Defendant Deputy Breedlove assisted with Mr. Thompson and sent him to the medical unit due to the bleeding from the bandage around his head.

53. As a result of the omissions and failures of Defendants, Mr. Thompson was not given a proper mental health screening and was placed in the jail on the second-floor unit with regular inmates.

54. On July 11, 2018, Defendant Deputy Breedlove observed Mr. Thompson in his cell at approximately 10:22 p.m.

55. On July 11, 2018 at approximately 10:34 p.m., Defendant Deputy Breedlove found Jerome Thompson in distress after he had jumped from the second floor of the POD unit.

56. Upon information and belief, all employees of the Mecklenburg County Jail were on duty at various times from July 11, 2018 and knew or should have known of Mr. Thompson's severe and significant mental health symptoms but negligently, grossly

12

negligently, willful and wantonly, deliberately, and recklessly failed to provide adequate mental health care to Mr. Thompson.

57. Upon information and belief, Defendant Wallace, Defendant Elliott, Defendant House and Defendant John Doe, were employees of Defendant Wellpath and were on duty at various times from July 11, 2018, and knew or should have known of Mr. Thompson's severe and significant health symptoms and deteriorating mental condition but negligently, grossly negligently, willful and wantonly, and deliberately and recklessly failed to provide adequate medical care to Mr. Thompson.

58. Defendants knew, or should have reasonably known, that Mr. Thompson was severely depressed and posed a significant suicidal risk having previously attempted suicide twice that day. The Defendants breached that duty of care owed Mr. Thompson.

59. Defendants were negligent and grossly negligent in that they failed to place Mr. Thompson on suicide watch when it was clear that he was emotionally unstable. The records further indicate that Defendants failed to observe Mr. Thompson in the prescribed manner which allowed him to walk around freely and jump to his death.

60. The Defendants, jointly and severally, exhibited deliberate indifference to the serious mental health needs of Jerome Thompson by failing to provide information regarding Mr. Thompson's prior suicide attempts on July 11, 2018, failed to provide proper mental health assessments, causing the unnecessary and wanton infliction of pain, and proximately causing his death on July 12, 2018, all in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

13

61. The Defendant, Sheriff McFadden who has a non-delegable duty to provide inmates, including Jerome Thompson, with adequate mental health screenings, failed to provide adequate mental health screening and other protections for Jerome Thompson, thereby proximately causing his death on July 12, 2018.

62. As a result of the Plaintiff's decedent's death, the Plaintiff is entitled to recover all damages allowed by North Carolina law for violation of 42 U.S.C. § 1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. § 1983.

63.     The Plaintiff is also seeking punitive damages against Defendants because the conduct set forth above constitutes deliberate indifference, willful and wanton conduct and intentional conduct towards Jerome Thompson and this conduct caused his death.

**FIRST CLAIM FOR RELIEF AGAINST
DEFENDANTS CITY OF CHARLOTTE,
DEFENDANT CHIEF JENNINGS,  OFFICER KINSTLER,
OFFICER KURSACK, JOHN DOE, OFFICER WILSON, AND JOHN DOE
(INJURY TO PRISONER UNDER N.C.G.S. § 162-55)**

64. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

65. Defendants City of Charlotte, Defendant Chief Jennings, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe failed to provide information regarding Mr. Thompson's suicidal inclinations and two suicide attempts on July 11, 2018 in order for Mecklenburg County Jail employees to properly ascertain Mr. Thompson's mental

14

health status upon his commitment to Mecklenburg County Jail and failed to take the adequate steps necessary to prevent him from causing harm to himself.

66. The actions of Defendants City of Charlotte, Defendant Chief Jennings, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe were in violation of N.C.G.S. § 162-55.

67. Defendants City of Charlotte, Defendant Chief Jennings, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe were reckless and careless and showed deliberate indifference of the consequences or a heedless indifference to the rights of Mr. Thompson by not insuring that the Mecklenburg County Jail had full information about Mr. Thompson's inclination and attempted suicides.

68. Defendants City of Charlotte, Defendant Chief Jennings, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe were reckless and careless and showed deliberate indifference of the consequences or a heedless indifference to the rights of Mr. Thompson by not providing information regarding Mr. Thompson's suicidal inclinations and two suicide attempts on July 11, 2018 in order for Mecklenburg County Jail employees to properly ascertain Mr. Thompson's mental health status upon his commitment to Mecklenburg County Jail so that Jail staff could adequately observe and place Mr. Thompson in adequate facilities to insure that a suicidal Mr. Thompson did not harm himself.

69. Defendant Sheriff McFadden, Defendant Deputy Venant Defendant Deputy Breedlove and John Doe were reckless and carless and showed a deliberate indifference

15

of the consequences or a heedless indifference to the rights of Mr. Thompson by not creating and keeping a record of Mr. Thompson during his incarceration, in violation of Mr. Thompson's rights.

70. Defendants City of Charlotte, Defendant Chief Jennings, Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe were reckless and careless and showed a deliberate indifference of the consequences or a heedless indifference to the rights of Mr. Thompson by not acquiring Mr. Thompson's full medical charts and all arrest records from Charlotte-Mecklenburg Police Department to accompany Mr. Thompson to the Mecklenburg County Jail.

71. The actions and/or omissions of Officer Kinstler, Officer Kursack, Officer Wilson, and John Doe are imputed to Defendants City of Charlotte, Defendant Chief Jennings.

72. That Defendant "John Doe" to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed with the Charlottes Mecklenburg Police Department, and is being named as a defendant herein both as an employee of the Charlotte Mecklenburg Police Department and individually, to be identified and served upon disclosure by defendants who are in exclusive possession and control of John Doe's identity.

73. The acts or omissions of all Defendants were the legal and proximate cause of Mr. Thompson's injuries and death.

16

74. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT CITY OF CHARLOTTE
### (Public Entity Liability Federal Claim § 1983)

75. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

76. Based on information and belief, the City of Charlotte and its decision makers, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Mr. Thompson, the public and the Plaintiffs, as well as others similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied the following policies, practices, or customs:

    a. Failed to implement protocols and train officers in the proper way to transfer arrested suspects who suffered from mental health conditions or who were suicidal into the custody and care of the Mecklenburg County Jail;

    b. Failed to adequately train, supervise, and or control employees in the proper way to transfer arrested suspects who suffered from mental health

17

conditions or who were suicidal into the custody and care of the Mecklenburg County Jail;

    c.  Failed to adequately train, supervise, and control employees in the necessity of providing thorough information to the Mecklenburg County Jail when transferring arrested suspects who suffered from mental illness and who were suicidal.

77. The Defendants knew or should have known that its employees would fail to adequately identify and respond appropriately to suspects, arrestees, and inmates serious and life-threatening mental health conditions, thereby violating inmates Federal and State Constitutional Rights.

78. The Defendants were deliberately indifferent to the obvious serious mental health needs of inmates and jail detainees, knowing that potentially fatal consequences could be suffered by such individuals, including Mr. Thompson, as a result of Defendants' failure to properly train and supervise their employees. The Defendants could and should have taken reasonable steps to insure that their employees were reasonably and adequately supervised and trained to respond to suspects, arrestees, and inmate's mental health conditions and suicidal tendencies but failed to so.

79. The Defendants' policies, customs, and practices in failing to adequately

80. supervise and train their employees were the proximate and legal causes of violations of Mr. Thompson's Federal and State Constitutional Rights.

81. Defendants were at all times relevant to this claim acting pursuant to municipal custom, policy, protocol, ordinance, regulation, wide-spread habit, usage, or practice in their actions pertaining to Mr. Thompson. Defendants' actions in this regard are evidenced by a pattern of bad faith and deliberate indifference to mental health needs and constitutional rights of inmates among multiple jail staff as directed towards Mr. Thompson.

82. The acts or omissions of the Defendants, jointly and severally, caused Mr. Thompson severe mental and physical harm in the days before his death, and proximately caused his death.

83. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS SHERIFF GARRY L. MCFADDEN, DEPUTY VENANT, DEPUTY BREEDLOVE AND JOHN DOE (INJURY TO PRISONER UNDER N.C.G.S. § 162-55)

84. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85. Defendant Sheriff McFadden is duly charged as the keeper of the jail in Mecklenburg County.

19

86. Defendant Sheriff McFadden, Defendant Deputy Venant Defendant Deputy Breedlove and John Doe failed to ascertain Mr. Thompson's mental health status upon his commitment to Columbus County and failed to take the adequate steps necessary to prevent him from causing harm to himself.

87. The actions of Defendant Sheriff McFadden, Defendant Deputy Venant Defendant Deputy Breedlove and John Doe were in violation of N.C.G.S. § 162-55.

88. Defendant Sheriff McFadden, Defendant Deputy Venant Defendant Deputy Breedlove and John Doe were reckless and careless and showed deliberate indifference of the consequences or a heedless indifference to the rights of Mr. Thompson by not insuring that the Mecklenburg County Jail had full information about Mr. Thompson's inclination and attempted suicides.

89. Defendant Sheriff McFadden, Defendant Deputy Venant Defendant Deputy Breedlove and John Doe were reckless and careless and showed deliberate indifference of the consequences or a heedless indifference to the rights of Mr. Thompson by not thoroughly evaluating Mr. Thompson and providing adequate observation and facilities to insure that a suicidal Mr. Thompson did not harm himself.

90. Defendant Sheriff McFadden, Defendant Deputy Venant Defendant Deputy Breedlove and John Doe were reckless and carless and showed a deliberate indifference of the consequences or a heedless indifference to the rights of Mr. Thompson by not creating and keeping a record of Mr. Thompson during his incarceration, in violation of Mr. Thompson's rights.

20

91. Defendant Sheriff McFadden, Defendant Deputy Venant Defendant Deputy Breedlove and John Doe were reckless and careless and showed a deliberate indifference of the consequences or a heedless indifference to the rights of Mr. Thompson by not acquiring Mr. Thompson's full medical charts and all arrest records from Charlotte-Mecklenburg Police Department to accompany Mr. Thompson to the Mecklenburg County Jail.

92. That Defendant "John Doe" to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed as a the Medical Director and Chief Physician employed by Wellpath at the Mecklenburg County Jail, and is being named as a defendant herein both as an employee of Wellpath and individually, to be identified and served upon disclosure by defendants who are in exclusive possession and control of John Doe's identity.

93. The actions and/or omissions of Mecklenburg County Jail staff are imputed to Defendant Sheriff McFadden.

94. The acts or omissions of all Defendants were the legal and proximate cause of Mr. Thompson's injuries and death.

95. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

21

## FOURTH CLAIM FOR RELIEF AGAINST
## DEFENDANTS SHERIFF GARRY L. MCFADDEN,
## DEPUTY VENANT DEPUTY BREEDLOVE AND JOHN DOE
## (§ 1983: FAILURE TO PROPERLY ASSESS)

96. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

97. At all times relevant to the allegations in this Complaint, Defendants, jointly and severally, acted or failed to act under color of state law.

98. Defendants are persons under title 42 U.S.C. § 1983.

99. At all times relevant to the allegations in this Complaint, Defendants, jointly and severally, were acting pursuant to local custom, policy, or practice in their actions pertaining to Jerome Thompson.

100. At all times material hereto, Defendants, jointly and severally, knew or should have known of Mr. Thompson's potentially life-threating mental conditions.

101. Despite having actual and/or constructive knowledge of Mr. Thompson's serious and potentially life-threatening mental conditions, Defendants, negligently, grossly negligently, willful and wantonly, and with deliberate and reckless indifference to Mr. Thompson's Federal and State Constitutional rights to adequate and necessary medical care, protected by the Due Process clause of the Fourteenth Amendment, denied Mr. Thompson such mental health care and failed to examine, treat, and care for Mr. Thompson's steadily worsening mental health condition and failed to send Mr. Thompson for adequate mental health treatment.

22

102. Defendants, jointly and severally, did so despite their knowledge of Mr. Thompson's obvious and substantial mental needs, placing him at risk of substantial physical harm.

103. Mr. Thompson, as an inmate at the Mecklenburg County Detention Center, had clearly established life, bodily integrity, and liberty rights under the Eighth and Fourteenth Amendments to the United States Constitution, and under the North Carolina State Constitution, including freedom from deliberate indifference to his serious mental health needs and to proper mental health care while in custody.

104. The acts or omissions of the Defendants were within the scope of their official duties and employments.

105. The acts and omissions of each Defendant were malicious, willful and wanton, and committed with deliberate and reckless indifference for Mr. Thompson's health, safety and Civil Rights, such that Defendants are individually liable as well.

106. The acts or omissions of all Defendants were the legal and proximate cause of Mr. Thompson's injuries and death.

107. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

23

## FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## (§ 1983: FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT)

108. Plaintiff repeats re-alleges and re-asserts each and every allegation set forth in the proceeding paragraphs, as if fully set forth herein.

109. At all times relevant to the allegations in this Complaint, Defendants, jointly and severally, acted or failed to act under color of state law.

110. Defendants are persons under title 42 U.S.C. § 1983.

111. At all times relevant to the allegations in this Complaint, Defendants, jointly and severally, were acting pursuant to local custom, policy, or practice in their actions pertaining to Mr. Jerome Thompson.

112. At all times material hereto, Defendants, jointly and severally, knew or should have known of Mr. Thompson's potentially life-threating medical and mental health conditions.

113. Despite having actual and/or constructive knowledge of Mr. Thompson's serious and potentially life-threatening medical and mental health conditions, Defendants, negligently, grossly negligently, willful and wantonly, and with deliberate and reckless indifference to Mr. Thompson's Federal and State Constitutional rights to adequate and necessary medical care, protected by the Due Process clause of the Fourteenth Amendment, denied Mr. Thompson such medical care and failed to examine, treat, and care for Mr. Thompson's medical and mental health condition and failed to send Mr. Thompson for adequate medical and mental health treatment.

114. Defendants, jointly and severally, did so despite their knowledge of Mr. Thompson's obvious and substantial medical and mental health needs, placing him at risk of substantial physical harm.

24

115. Mr. Thompson, as an inmate at the Mecklenburg County Jail, had clearly established life, bodily integrity, and liberty rights under the Eighth and Fourteenth Amendments to the United States Constitution, and under the North Carolina State Constitution, including freedom from deliberate indifference to his serious medical and mental health needs and to proper medical care while in custody.

116. When Mr. Thompson showed the need and/or asked for medical and mental health assistance, or others on his behalf asked for medical and mental health assistance, Defendants acted negligently, grossly negligently, willful and wantonly, and with deliberate and reckless indifference to Mr. Thompson's obvious and serious medical and mental health needs and constitutional rights in failing to obtain and provide adequate medical and mental health treatment for him in a timely and appropriate fashion.

117. The acts or omissions of the Defendants were within the scope of their official duties and employments.

118.  The acts and omissions of each defendant also were malicious, willful and wanton, and committed with deliberate and reckless indifference for Mr. Thompson's health, safety and Civil Rights, such that Defendant are individually liable as well.

119. That Defendant "John Doe" to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed as a the Medical Director and Chief Physician employed by Wellpath at the Mecklenburg County Jail, and is being named as a defendant herein both as an employee of  Wellpath and individually, to be identified and served upon disclosure by defendants who are in exclusive possession and control of John Doe's identity.

25

120. The acts or omissions of all Defendants were the legal and proximate cause of Mr. Thompson's injuries and death.

121. The acts or omissions of each Defendant caused Mr. Thompson damages in that he suffered extreme physical pain and mental suffering during the days before his death.

122. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

### SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANT WELLPATH, DEFENDANT WALLACE, DEFENDANT ELLIOTT, DEFENDANT HOUSE AND DEFENDANT JOHN DOE
### (§ 1983: FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT)

123. Plaintiff repeats, re-alleges and re-asserts each and every allegation set forth in the proceeding paragraphs, as if fully set forth herein.

124. At all times relevant to the allegations in this Complaint, Defendants, jointly and severally, acted or failed to act under color of state law.

125. Defendants are persons under title 42 U.S.C. § 1983.

126. At all times relevant to the allegations in this Complaint, Defendants, jointly and severally, were acting pursuant to local custom, policy, or practice in their actions pertaining to Mr. Jerome Thompson.

127. At all times material hereto, Defendants, jointly and severally, knew or should have known of Mr. Thompson's potentially life-threating medical and mental health conditions.

128. Despite having actual and/or constructive knowledge of Mr. Thompson's serious

26

and potentially life-threatening medical and mental health conditions, Defendants, negligently, grossly negligently, willful and wantonly, and with deliberate and reckless indifference to Mr. Thompson's Federal and State Constitutional rights to adequate and necessary medical care, protected by the Due Process clause of the Fourteenth Amendment, denied Mr. Thompson such medical care and failed to examine, treat, and care for Mr. Thompson's medical and mental health condition and failed to send Mr. Thompson for adequate medical and mental health treatment.

129. Defendants, jointly and severally, did so despite their knowledge of Mr. Thompson's obvious and substantial medical and mental health needs, placing him at risk of substantial physical harm.

130. Mr. Thompson, as an inmate at the Mecklenburg County Jail, had clearly established life, bodily integrity, and liberty rights under the Eighth and Fourteenth Amendments to the United States Constitution, and under the North Carolina State Constitution, including freedom from deliberate indifference to his serious medical and mental health needs and to proper medical care while in custody.

131. When Mr. Thompson showed the need and/or asked for medical and mental health assistance, or others on his behalf asked for medical and mental health assistance, Defendants acted negligently, grossly negligently, willful and wantonly, and with deliberate and reckless indifference to Mr. Thompson's obvious and serious medical and mental health needs and constitutional rights in failing to obtain and provide adequate medical and mental health treatment for him in a timely and appropriate fashion.

132. The acts or omissions of the Defendants were within the scope of their official duties and employments.

27

133. The acts and omissions of each defendant also were malicious, willful and wanton, and committed with deliberate and reckless indifference for Mr. Thompson's health, safety and Civil Rights, such that Defendant are individually liable as well.

134. That Defendant "John Doe" to Plaintiff's information and belief, is a citizen and resident of Mecklenburg County, North Carolina, and was at all material times and is employed as a the Medical Director and Chief Physician employed by Wellpath at the Mecklenburg County Jail, and is being named as a defendant herein both as an employee of Wellpath and individually, to be identified and served upon disclosure by defendants who are in exclusive possession and control of John Doe's identity.

135. The acts or omissions of all Defendants were the legal and proximate cause of Mr. Thompson's injuries and death.

136. The acts or omissions of each Defendant caused Mr. Thompson damages in that he suffered extreme physical pain and mental suffering during the days before his death.

137. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, Plaintiff has sustained damages in an amount in excess of Seventy Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

**SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT**
**SHERIFF GARRY L. MCFADDEN**
**(§ 1983: LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE)**

138. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

139. Defendant Sheriff McFadden, Defendant Deputy Venant Defendant Deputy Breedlove and John Doe, all of whom were acting in a governmental capacity at the time of Mr. Thompson's death, failed to properly train and supervise their employees and subordinates to recognize and appropriately respond to mental health care emergencies.

140. Prior to Mr. Thompson's death on July 12, 2018, other inmates at the Mecklenburg County Detention Center suffered and died due to the Defendants denial of adequate mental health care and screenings, including Ryan Helder on December 9, 2015, Michael Perrella on May 10, 2016, John Lindsey on June 1, 2017, Kenneth Bigham on May 13, 2018, Jamarcus McIlWaine on June 28, 2018, and Lavarchio Allen on July 5, 2018 such that Defendants, jointly and severally, have engaged in pattern and practice so as to create a custom, policy and practice of failing to provide adequate mental health care to inmates in their custody, care and control.

141. The Defendants knew or should have known that its employees would fail to adequately identify and respond appropriately to inmates serious and life-threatening mental health conditions, thereby violating inmates Federal and State Constitutional Rights.

142. The Defendants were deliberately indifferent to the obvious serious medical needs of patients and jail detainees, knowing that potentially fatal consequences could be suffered by such individuals, including Mr. Thompson, as a result of Defendants' failure to properly train and supervise their employees. The Defendants could and should have taken reasonable steps to insure that their employees were reasonably and adequately

29

supervised and trained to respond to inmate's mental health conditions and suicidal tendencies but failed to so.

143. The Defendants' policies, customs, and practices in failing to adequately supervise and train their employees were the proximate and legal causes of violations of Mr. Thompson's Federal and State Constitutional Rights.

144. Defendants were at all times relevant to this claim acting pursuant to municipal custom, policy, protocol, ordinance, regulation, wide-spread habit, usage, or practice in their actions pertaining to Mr. Thompson. Defendants' actions in this regard are evidenced by a pattern of bad faith and deliberate indifference to medical needs and constitutional rights of inmates among multiple jail staff as directed towards Mr. Thompson.

145. The acts or omissions of the Defendants, jointly and severally, caused Mr. Thompson severe mental and physical harm in the days before his death, and proximately caused his death.

146. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of the Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

**EIGTH CLAIM FOR RELIEF AGAINST**
**DEFENDANT SHERIFF GARRY L. MCFADDEN**
**(§ 1983 FAILURE TO PROVIDE ADEQUATE STAFFING AND RESOURCES)**

30

147. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

148. Defendant, through his agents and employees was deliberately indifferent to, ignored and disregarded the serious health care needs of Jerome Thompson while he was incarcerated at the Mecklenburg County Detention Center, which led to or caused the death of Jerome Thompson. Furthermore, the Defendant, through his agents and employees failed to remedy the understaffing problems and shortages that have been persistent and ongoing at the Mecklenburg County Detention Center.

149. Specifically, Defendant, through his agents and employees, failed to have adequate staffing to comply with State Statutes and Regulations regarding mental health services for inmates and inmate observations, such that Officers who were supposed to perform inmate observations were required to perform intake and booking duties, as well as inmate transportation. In addition, the Defendant's jail monitoring system, including management software, was inadequate and deficient with respect to recording inmate observations. This persistent understaffing and lack of adequate resources directly led to the denial of medical care to Jerome Thompson and ultimately to his death.

150. As a direct and proximate and foreseeable result of the violations of the Eighth and Fourteenth Amendment to the United States Constitution and the misconduct of Defendant, as set forth above, Jerome Thompson suffered injuries which caused his death and a violation of his Federal and State Civil Rights.

151. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of the Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

## NINTH CLAIM FOR RELIEF AGAINST DEFENDANT OHIO CASUALTY
### (Actions Against Surety)

152. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

153. Upon information and belief, at all times relevant herein, Defendant Sheriff McFadden maintained an official bond issued by Defendant Ohio Casualty as required by N.C.G.S. § 162-8

154. The official bond issued by Defendant Ohio Casualty guaranteed the faithful execution by Defendant Sheriff McFadden and his employees of his office as the Sheriff of Mecklenburg County, and covered any damages resulting from the negligence of the sheriff or his employees in the performance of their official duties.

155. The actions of Defendant Sheriff McFadden, in his official capacity, and other employees of the Mecklenburg County Sheriff, are covered by the official bond issued by Defendant Ohio Casualty and the Defendants have waived the defense of governmental immunity to the extent of the Sheriff's official bond.

32

156. The acts or omissions of all Defendants were the legal and proximate cause of Mr. Thompson's injuries and death.

157. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of Defendants, jointly and severally, the Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

## TENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## WRONGFUL DEATH ACTION PURSUANT TO N.C.G.S. § 28-174

158. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

159. This is an action for damages against Defendants for wrongful death of the Plaintiff's decedent, Jerome Thompson.

160. As a direct and proximate result of Defendants' negligence, gross negligence, willful and wanton conduct, and deliberate and reckless indifference for the safety and mental health conditions of Jerome Thompson, he suffered pain and mental suffering and eventually died from a lack of adequate mental care.

161. As a result of Jerome Thompson's death, the Plaintiff is entitled to recover all damages allowed under the North Carolina Wrongful Death Statute including the following damages, to wit:

a. Expenses for care, treatment and hospitalization incident to the injury resulting in death;

b. Compensation for pain and suffering of the decedent;

c. The reasonable funeral expense of the decedent;

d. The monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected:

  i. Net income of the decedent,

  ii. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered;

  iii. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered;

e. Such punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, willful or wanton injury, or gross negligence;

f. Nominal damages when the jury finds.

162. As a direct and proximate result of the aforesaid constitutional violations, civil rights violations and misconduct of the Defendants, jointly and severally, the

Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00), including for pain and suffering prior to his death, lost earnings, medical expenses, and wrongful death damages.

## ELEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (PUNITIVE DAMAGES)

163. Plaintiff repeats, re-alleges, and re-asserts each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

164. Defendants, jointly and severally, acted in a willful and wanton, malicious, reckless, deliberately indifferent, and egregious manner by, inter alia, engaging in the conduct detailed herein, such that Plaintiff is entitled to an award of punitive damages pursuant to North Carolina General Statute 1D-1 et. seq. against Defendants, jointly and severally, in amounts in excess of Seventy-Five Thousand Dollars and No/100 Dollars ($75,000.00).

WHEREFORE, Plaintiff, Linda Gail Thompson, as Administratrix of the Estate of Jerome Thompson, prays the Court enter a judgement and award against Defendants, jointly and severally, as follows:

1. That Plaintiff have and recover of the Defendants, jointly and severally, compensatory damages in an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) for damages, together with interest at the legal rate;

Case 3:20-cv-00370-MOC-DSC   Document 1   Filed 07/10/20   Page 35 of 36

2. That Plaintiff have and recover of the Defendants, jointly and severally, punitive damages an amount in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) for damages, together with interest at the legal rate;

3. That all issues of fact be tried by a jury;

4. That the costs of this action, including reasonable attorney's fees, be taxed against the Defendants, jointly and severally; and

5. For such other and further relief as to the Court may seem just and proper.

This the 10th day of July, 2020.

/s/ Karonnie R. Truzy
Karonnie R. Truzy
NC State Bar No.: 28228
krtruzy@crumleyroberts.com

s/ David J. Ventura
David J. Ventura
NC State Bar No.: 34898
djventura@crumleyroberts.com

CRUMLEY ROBERTS, LLP
2400 Freeman Mill Road, Suite 200
Greensboro, NC 27406
Office: 336-333-9899
Facsimile: 336-333-9894
*Attorneys for the Plaintiff*

36