UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-370-MOC-DSC

| | |
|---|---|
| LINDA GAIL THOMPSON, as Personal Representative of the Estate of JEROME THOMPSON,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF CHARLOTTE et al.,<br><br>　　　　　　Defendants. | ORDER |

**THIS MATTER** comes before the Court on three Motions to Dismiss for Failure to State a Claim, filed by Defendants Joseph B. Breedlove, Garry L. McFadden, and Louis L. Venant ("County Defendants") (Doc. No. 22), Defendant Ohio Casualty Insurance Company (Doc. No. 25), and the City of Charlotte ("the City") (Doc. No. 38).

**I.　　PROCEDURAL BACKGROUND**

Plaintiff Linda Gail Thompson is the personal representative of the Estate of Jerome Thompson. Mr. Thompson died on July 12, 2018, after he jumped from a second-floor balcony at the Mecklenburg County Jail. Plaintiff filed the original Complaint in this action on July 10, 2020 and an Amended Complaint on August 26, 2020, pursuant to 42 U.S.C. § 1983, N.C. GEN. STAT. § 162-55, and N.C. GEN. STAT. § 28-174. Plaintiff named as Defendants (1) City of Charlotte, (2) Charlotte-Mecklenburg Police Department ("CMPD") Chief Johnny Jennings, (3) Officer Adelaide Kinstler, (4) Officer Brian Kurcsak, (5) Officer Joseph Wilson, (6) Mecklenburg County Sheriff Garry McFadden, (7) Deputy Louis Venant, (8) Deputy Joseph Breedlove, (9) the Sheriff's surety, Ohio Casualty Insurance Company, (10) the Jail's medical

1

provider, Wellpath LLC, and (11) Wellpath employees Ebonee Denise Roberts, Laura House, and Samantha Elliott-McLaren. (Amended Compl. at ¶¶ 1-7). Plaintiff has also sued "John Doe." (Id. at ¶ 7). Plaintiff brought this action alleging claims for deliberate indifference to the serious medical needs of Mr. Thompson, a pretrial detainee, against the City, the CMPD Police Chief, CMPD officers, County Defendants, and Wellpath Inc. medical staff relating to medical care and detainment decisions made during the single day he was incarcerated at the Mecklenburg County Detention Center on July 11, 2018. Plaintiff requests damages under 42 U.S.C. § 1983, including compensation of attorney's fees, as well as punitive damages for the deliberate indifference towards Mr. Thompson causing his wrongful death.

## II. FACTUAL ALLEGATIONS

On July 11, 2018, Mr. Thompson was arrested and taken into custody for questioning by the Charlotte Mecklenburg Police Department. (Doc. No. 35 at 3). Before Mr. Thompson's arrest, CMPD officers were informed that Mr. Thompson was suicidal and should be monitored as such. (Id.). While in the care and custody of CMPD, Mr. Thompson was seen on surveillance attempting to puncture an artery in his neck with a pen cap and intentionally falling backwards onto this head to injure himself. (Id.).

CMPD officers Kinstler, Kursack, and Wilson transferred Mr. Thompson to Carolinas Medical Center for injuries to his head but failed to notify medical staff that Mr. Thompson had attempted to harm himself twice before being seen at the medical facility. (Id.). On July 11, 2018, at around 3:55 p.m., CMPD officers Kinstler, Kursack, and Wilson transferred Mr. Thompson to the Mecklenburg County Detention Center, where he was placed in the care and custody of the Mecklenburg County Sheriff and his deputies. (Id. at 4).

Plaintiff alleges that when Mr. Thompson was placed in the jail, CMPD Officers

2

Kinstler, Kursack, and Wilson provided intake personnel, including Defendants Venant and Breedlove, information regarding Mr. Thompson's prior suicide attempts, but that Defendants failed to act upon that information when screening Mr. Thompson. (Doc. No. 1, Compl. at ¶ 49). Plaintiff alleges alternatively that the CMPD officers failed to notify the jail intake personnel about Mr. Thompson's prior suicide attempts. (Doc. No. 35 at 4).

Mr. Thompson was processed and booked into the jail and assessed by the jail's medical personnel, Defendants Roberts and McLauren. (Id.). Mr. Thompson's screening showed he suffered extreme depression and was taking multiple medications for this condition. (Id.). Later, Mr. Thompson was again seen by the jail's medical unit as a result of bleeding from his bandaged head. (Id.). Plaintiff has alleged that Defendants failed to provide a proper mental health screening which would have required further observation. (Id.). Instead, Plaintiff was placed on the second floor of the jail in a unit with regular inmates, where he jumped from the balcony and later died from the injuries sustained in the fall. (Id.).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough

facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Id.) (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (Id.). However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. (Id. at 679).

### III. DISCUSSION

#### A. Deliberate Indifference to Mr. Thompson under § 1983

Plaintiff first purports to bring claims against the City, the CMPD Police Chief, CMPD officers, County Defendants, Wellpath Inc., those employed by Wellpath at the Mecklenburg County Jail, and "John Doe" for deliberate indifference to Mr. Thompson's serious medical needs in violation of his Eighth and Fourteenth Amendment rights. Plaintiff advances this claim differently against the various Defendants, and these different arguments will be examined below.

Nevertheless, all these claims must meet the following legal standards. A Section 1983 action premised on a violation of the Fourteenth Amendment for inadequate medical care requires allegations that each defendant acted with deliberate indifference to the decedent's

4

serious medical needs. Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc). Inmates bringing deliberate indifference claims against prison officials "may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." Id. at 1067–68; see also Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."). Nevertheless, under either clause, a plaintiff must show that the prison officials acted with "deliberate indifference." Id. at 1068. While the standard for finding deliberate indifference under the Eighth Amendment is clear, the standard under the Fourteenth Amendment is in flux.

To state a claim for deliberate indifference in violation of the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' to the inmate's 'serious medical needs.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). A prison official is deliberately indifferent if he has actual knowledge of and purposefully disregards "the risk posed by the serious medical needs of the inmate." Iko, 535

5

F.3d at 241 (citing Farmer, 511 U.S. at 837); see also Makdessi v. Fields, No. 13-7606, 2015 WL 1062747, at *9 (4th Cir. Mar. 12, 2015) (holding that the subjective prong "may be proven by circumstantial evidence that a risk was so obvious that it had to have been known"). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837. Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. Moreover, while the Constitution requires a prison to provide inmates with medical care, a prisoner is not entitled to receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). A prisoner's difference of opinion over matters of expert medical judgment or a course of medical treatment do not rise to the level of a constitutional violation. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Traditionally, the deliberate indifference test has been the same whether brought as part of a claim by an inmate under the Eighth Amendment or by a pretrial detainee pursuant to the Fourteenth Amendment. See, e.g., Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards."). But following the Supreme Court's decision in Kingsley and the Ninth Circuit's decision in Castro,

6

the applicable standard for a pretrial detainee's claim of deliberate indifference to a serious medical need is now less clear. See Kingsley v. Hendrickson, 576 U.S. 389 (2015); Castro, 833 F.3d at 1067-68. In Kingsley, the Supreme Court held that a pretrial detainee bringing an excessive force claim under Section 1983 must satisfy an objective standard with respect to whether an official's use of force was excessive without applying a subjective standard that takes an official's state of mind into account. 576 U.S. at 396. The Court held that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," a determination made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time." Id. at 397. The Ninth Circuit then held in Castro that even though Kingsley "did not squarely address whether the objective standard applies to all kinds of claims by pretrial detainees" under the Fourteenth Amendment, failure-to-protect claims, such as prison officials' failure to protect an inmate from violence at the hands of other inmates, brought by pretrial detainees are also subject to an objective standard, reasoning that Kingsley's logic applied with equal force to failure-to-protect claims. 833 F.3d at 1069. Therefore, Castro held that while a pretrial detainee bringing a failure-to-protect claim need not show a defendant's subjective awareness of the level of risk, a plaintiff bringing such a claim must "prove more than negligence but less than subjective intent—something akin to reckless disregard." (Id. at 1071) (citing Restatement (Second) of Torts § 500 cmt. a. for the proposition that "reckless disregard may be shown by an objective standard under which an individual is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it").

    Left unclear in Kingsley and Castro's wake, however, is whether a pretrial detainee bringing a claim for deliberate indifference to serious medical needs must prove that the

7

defendant's action was subjectively or objectively reasonable. Recently, a district court attempted to clarify this open question by holding that the logic of Kingsley and Castro indicates that an objective test, without a subjective component, applies under the Fourteenth Amendment involving cases of deliberate indifference to a pretrial detainee's serious medical needs. See Scalia v. County of Kern, 308 F. Supp. 3d 1064, 1075 (E.D. Cal. 2018). According to that court, the objective test for deliberate indifference for untreated medical conditions requires a plaintiff to show (1) a serious medical need, (2) a purposeful act or failure to respond to a prisoner's pain or possible medical need, even though a reasonable defendant in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (3) harm caused by the indifference. (Id. at 1076). The "second prong requires an intent level "more than mere negligence but less than subjective intent—something akin to reckless disregard." (Id.) (citing Castro, 833 F.3d at 1071).

At this time, the Court does not resolve whether to follow the Eastern District of California because whether the traditional two-prong test or a single-prong objective inquiry applies does not change the Court's decision at this motion to dismiss stage.

### 1. Monell Liability Against the City of Charlotte

Plaintiff's Second Claim for Relief is for Section 1983 liability against the City for deliberate indifference to Mr. Thompson resulting from city policies and procedures. (Amended Compl. at ¶¶ 75-83).

For a Section 1983 claim of municipal liability to survive based on the alleged constitutional torts of City employees, a plaintiff must plausibly allege facts on which a reasonable fact finder could find that some municipal "policy" or "custom" caused a deprivation of the plaintiff's federal rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Put

another way, Section 1983 liability can only attach where the City causes the constitutional violation itself, as there simply is no vicarious liability in Section 1983 proceedings. City of Canton v. Harris, 489 U.S. 378, 385 (1989).

In Carter v. Morris, 164 F.3d 215 (4th Cir. 1999), the Court of Appeals for the Fourth Circuit provided four sources of an "official policy or custom" that may give rise to municipal liability: (1) "written ordinances and regulations"; (2) "affirmative decisions of individual policymaking officials"; (3) omissions by policymaking officials "that manifest deliberate indifference to the rights of the citizens"; or (4) a practice "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Id. at 218 (citations omitted). The Supreme Court has held that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

In this case, Plaintiff's claim seeking municipal liability pivots on failure to implement protective policies and failure to train. Taking Plaintiff's allegations as true and construing all inferences in her favor, the Court finds that she has stated a claim sufficient to withstand a motion to dismiss as to her claim against the City for deliberate indifference to the medical needs of Mr. Thompson. Plaintiff alleges in the Amended Complaint, among other things, that the City failed to implement policies to protect suspects taken into custody who suffer from mental health conditions, failed to train employees in the proper way to transfer suspects who suffer from mental health conditions, and failed to train employees on how to handle or provide thorough information to medical personnel when committing suspects into the care of a detention center. (Id. at ¶ 76). As a result of these policy omissions and failure to train, Plaintiff contends that Mr.

9

Thompson did not receive adequate medical care. Mr. Thompson had twice attempted suicide on the day he was taken into custody, but this was not communicated to medical personnel. Mr. Thompson was placed on the second floor of the prison with regular inmates where he committed suicide by jumping from a balcony—something that would not have happened if policies and training had been in place to ensure he received the medical care he needed. Therefore, this claim survives the motion to dismiss.

### 2. Section 1983 Claims Against County Defendants

In the Fourth, Seventh, and Eighth Claims for Relief in the Amended Complaint, Plaintiff brings claims against Sherriff McFadden and deputies Venant and Breedlove, collectively County Defendants, under Section 1983 for failure to properly assess Mr. Thompson's mental health (Amended Compl. at ¶¶ 96-107), failure to train officers in the handling of and supervision of mentally ill individuals (Id. at ¶¶ 138-46), and failure to provide adequate staffing and resources in the jail (Id. at ¶¶ 147-51).

Here, Plaintiff concedes that the following claims should be dismissed: all official capacity claims against deputies Venant and Breedlove, and all individual capacity claims against Sheriff McFadden (along with punitive damages). (Doc. No. 35 at 4, 5, 14). Therefore, these claims are dismissed.

However, taking Plaintiff's allegations as true and construing all inferences in her favor, the rest of the Section 1983 claims against Defendants survive this motion to dismiss. Plaintiff makes specific allegations in her complaint regarding the actions of Defendants Breedlove and Venant. Plaintiff has alleged that (1) information regarding Mr. Thompson's suicide risk was provided to Defendants, (2) Defendants failed to use this information in screening Mr. Thompson, (3) Defendants therefore failed to provide adequate medical treatment among other

things, and (4) as a result, Defendants placed him on a second-floor jail unit with regular inmates (See Amended Compl. at ¶¶ 46-56). Plaintiff alleges that, while Defendants submitted Mr. Thompson for a mental health screening, the omissions of information and failures by Defendants caused the screenings to be inadequate for a proper determination of Mr. Thompson's mental health status. (Id. at ¶¶ 56-62).

Furthermore, Plaintiff alleges that the omissions and failures of deputies Venant and Breedlove were the result of Sheriff McFadden's (1) failure to train and supervise his deputies and (2) failure to adequately staff the prisons. Plaintiff has properly pled in the Amended Complaint that Defendant Sheriff McFadden was the sheriff in charge of the jail. (Id. at ¶¶ 29-31). Plaintiff has alleged that widespread policy and procedural issues formed the basis of the deliberate indifference that led to Mr. Thompson not receiving the care and treatment he needed. (Id. at ¶¶ 77-81). Plaintiff specifically asserts that Sheriff McFadden could and should have taken reasonable steps to ensure that their employees were reasonably and adequately supervised and trained to respond to inmate's mental health conditions and suicidal tendencies but failed to so. (Id. at ¶ 142). Plaintiff alleges that, as a result, Sheriff McFadden's policies, customs, and practices in failing to adequately supervise and train employees were the proximate and legal cause of violations of Mr. Thompson's constitutional rights leading to his death. (Id. at ¶ 143).

Moreover, Plaintiff has alleged that the violation of Mr. Thompson's Fourteenth and Eighth Amendment rights was also caused by Sheriff McFadden's failure to provide adequate staffing and resources to the jail. Specifically, she alleges that Sheriff McFadden failed to provide adequate mental health specialists, mental health resources, jail monitoring systems, management software, and staffing all leading to deficiencies in prisoner observation.

### 3. Section 1983 Claims Against All Defendants

In Plaintiff's Fifth Claim for Relief, she argues for Section 1983 liability against all Defendants for failure to provide medical care and treatment to Mr. Thompson in violation of his Eighth and Fourteenth Amendment rights. In the medical context of a Section 1983 claim, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko, 535 F.3d at 241 (quoting Estelle, 429 U.S. at 104).

Here, Plaintiff concedes that the following claims should be dismissed: "official capacity federal law claims against City employees, so long as the City is substituted for them or is already named as a defendant in those claims." (Doc. No. 42 at 14-15). Notwithstanding Plaintiff's objection or lack thereof, when a plaintiff sues both the local government and its officials or employees in their official capacities under Section 1983, the Fourth Circuit views the official capacity claims as duplicative and dismisses said claims. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004). Therefore, claims against city employees in their official capacities under Section 1983 are dismissed.

Here, taking Plaintiff's allegations as true and construing all inferences in her favor, the Court finds that she has stated a claim sufficient to withstand a motion to dismiss as to her claim against the City, the County Defendants, and Ohio Casualty for deliberate indifference to the serious medical needs of Mr. Thompson. Plaintiff alleges in the Amended Complaint that CMPD officers were notified at the time they arrested Mr. Thompson that he was suicidal. (Amended Compl. at ¶ 38). At the jail, while CMPD officers completed paperwork, surveillance footage showed Mr. Thompson using a pen cap to attempt to commit suicide by puncturing an artery. (Id. at ¶ 41). During this same period, Mr. Thompson was seen on surveillance video placing himself against the interview room wall and intentionally falling

12

backwards onto his head in a further attempt to commit suicide. (Id. at ¶ 42). Plaintiff also alleges that CMPD officers failed to provide information about his two suicide attempts to both the medical staff at the hospital and intake personnel at the jail. (Id. at ¶¶ 44-47). In the alternative, she alleges that Defendants at the jail such as intake personnel and sheriff deputies simply failed to use information about Mr. Thompson's suicide attempts in their screening and care of him. As a result, Plaintiff argues that the actions and omissions of all Defendants in failing to provide Mr. Thompson with adequate medical care based on the information they possessed caused them to place him in a second-floor cell with regular inmates. This placement created the circumstances that allowed him to jump from a second-floor balcony in a third attempt in a single day to commit suicide. Mr. Thompson later died from injuries sustained in this third attempt. Although it is true that Mr. Thompson is not entitled to unqualified access to health care and that treatment may be limited to what is medically necessary and not what he would prefer, Plaintiff's allegations at this stage are enough to meet the plausibility standard under Iqbal and Twombly.[1]

### B. State Law Claims

#### 1. Injury to Prisoner Statute Claim under N.C. GEN. STAT. § 162-55 against City of Charlotte and all Police and Sheriff Department Defendants

Regarding state tort claims involving North Carolina's "injury to prisoner" statute, Plaintiff concedes that the claims under N.C. GEN. STAT. § 162-55 "only apply to the County

---

[1] Certainly, following discovery, and on summary judgment, Defendants may submit affidavits and evidence to refute all of Plaintiff's allegations. On a motion to dismiss under Rule 12(b)(6), however, a plaintiff's burden is simply not as high as Defendants assume in their motion to dismiss.

13

Defendants." (Doc. No. 42 at 21). Therefore, all claims for criminal negligence under this statute against the City or its employees are dismissed. However, Plaintiff has sufficiently pled under the Twombly and Iqbal standard claims upon which relief can be granted against County Defendants. The injury to prisoner statute, N.C. GEN. STAT. § 162-55, provides that "[i]f the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class I misdemeanor." A plaintiff must "prove beyond a reasonable doubt that the jailer intended to injure the plaintiff or that the jailer was guilty of criminal negligence." Ramsey v. Schauble, 141 F. Supp. 2d 584, 591 (W.D.N.C. 2001). "Criminal negligence" is defined as "such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." Letchworth v. Gay, 874 F. Supp. 107, 109 (E.D.N.C. 1995).

Plaintiff's Amended Complaint alleges the following: (1) CMPD officers knew and ignored information they received and witnessed regarding Mr. Thompson's suicidal attempts and mental health; (2) CMPD alternatively failed to convey that information to Deputies Breedlove and Venant; (3) Deputies Breedlove and Venant omitted and failed to provide information regarding his suicide attempts to medical staff for proper evaluation regarding Mr. Thompson's suicide attempts; (4) medical staff did not provide Mr. Thompson adequate medical screening and treatment; (5) Mr. Thompson was placed on the second-floor unit with regular inmates; (6) Deputy Breedlove found Mr. Thompson after he jumped from the second floor; (7) Mr. Thompson died from his injuries; (8) all the above harm was the result of inadequate staffing, training, resources, and policies on the part of the City, Police Chief, and Sheriff (Amended Compl. at ¶¶ 34-63). These facts, taken in the light most favorable to Plaintiff,

14

Case 3:20-cv-00370-MOC-DSC   Document 45   Filed 11/30/20   Page 14 of 17

support a finding that County Defendants acted in heedless indifference to the safety and rights of Mr. Thompson. As such, Plaintiff's claims under the injury to prisoner statute against County Defendants survive the motions to dismiss.

### 2. Wrongful Death Claim Against All Defendants

Plaintiff's wrongful claim survives against all Defendants. Plaintiff must show that Defendants committed an act or omission which caused Thompson's death. Lane v. Dorney, 250 N.C. 15, 21 (1959). A jail official may be held liable under North Carolina law for the suicide of a prisoner only "if he had knowledge, or reason to know, that a prisoner was a danger to himself and failed to take precautions." Smith v. Phillips, 117 N.C. App. 378, 384 (1994) (internal citations omitted).

For the same reasons that the claims involving the injury to plaintiff statute survive the motions to dismiss, Plaintiff's claims for wrongful death pursuant to N.C. GEN. STAT. § 28-174 against all Defendants also survive the motions to dismiss.

### 3. Surety Claim against Ohio Casualty

Finally, Plaintiff's claims against Defendant Ohio Casualty survive this motion to dismiss. With the enactment of N.C. GEN. STAT. § 58-76-5 (formerly N.C. GEN. STAT. § 109-34), the North Carolina General Assembly specifically provided for a cause of action against a sheriff or other officers and their surety. Slade v. Vernon, 110 N.C. App. 422, 426 (1993). Pertinent portions of that statute read as follows:

> Every person injured by the neglect, misconduct, or misbehavior in office of any register, surveyor, sheriff, coroner, county treasurer, or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State, without any assignment thereof; and no such bond shall become void upon the first recovery, or if judgment is given for the defendant, but may be put in suit and prosecuted from time to time until the whole penalty is recovered; and every such officer and the sureties on the officer's official bond shall be liable to

the person injured for all acts done by said officer by virtue or under color of that
officer's office.

N.C. GEN. STAT. ANN. § 58-76-5. This statute has been broadly construed over its long history to cover not only acts done by the officer but also acts that should have been done. Daniel v. Grizzard, 117 N.C. 105 (1895); see also State ex rel. Williams v. Adams, 288 N.C. 501, 503–04 (1975). The last clause of the statute has been held to enlarge the conditions of the official bond to extend to all official duties of the office. Price v. Honeycutt, 216 N.C. 270 (1939); Kivett v. Young, 106 N.C. 567 (1890). The Supreme Court of North Carolina has specifically held that under this statute the sheriff and the surety on his official bond are liable for the wrongful death of a prisoner resulting from the negligence of the jailer in locking the prisoner, in a weakened condition, in a cell with a person whom the sheriff and jailer knew to be violently insane and who assaulted the prisoner, causing his death. Dunn v. Swanson, 217 N.C. 279 (1940).

Pursuant to the above statute and caselaw, Plaintiff has asserted a cause of action against Defendant Ohio Casualty for the "neglect, misconduct, and misbehavior" of the employees of the Mecklenburg County Sheriff's Department including Defendants Breedlove and Venant and the medical personnel hired by the Defendant Sheriff. Under the lenient standard of Twombly and Iqbal, Plaintiff has sufficiently pled facts to raise this claim.

### 4. Punitive Damages

Only some of Plaintiff's punitive damages claims survive the motions to dismiss. Punitive damages are not recoverable in official capacity lawsuits under federal and state law, unless specifically authorized by statute. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Long v. City of Charlotte, 306 N.C. 187, 208 (1982). Therefore, if any of the Plaintiff's official capacity claims other than the wrongful death claim survives summary

16

judgment, the punitive damages claims would be legally barred. See Jackson v. The Housing Auth. of the City of High Point, 316 N.C. 259, 265 (1986). As such, any punitive damages claims against entities acting in their official capacity are dismissed.

## IV. CONCLUSION

Defendants' motions to dismiss are GRANTED with regard to all official capacity claims against Louis Venant and Joseph Breedlove, all individual capacity claims against Sheriff McFadden, all official capacity claims against City employees, and the punitive damages claim against Sheriff McFadden and any other Defendant for actions taken in their official capacity. However, Defendants' motions to dismiss are DENIED with regard to all other claims.

**IT IS, THEREFORE, ORDERED** that:

1. The Motions to Dismiss for Failure to State a Claim, filed by Defendants, (Doc. No. 22; Doc. No. 25; Doc. No. 38) are **DENIED** in part and **GRANTED** in part.

Signed: November 30, 2020

Max O. Cogburn Jr
United States District Judge